IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RICHARD PLANTAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 10 C 108 |
| | ) | |
| | ) | Hon. Virginia M. Kendall |
| HARRY S. TRUMAN COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard J. Plantan ("Plantan") filed suit against his employer, Harry S.

Truman College, alleging race discrimination in violation of Title VII of the Civil Rights

Act of 1964.[1]  Plantan, a professor of accounting at Truman College, was suspended

from teaching for the Fall 2008 semester for violating certain City Colleges Work Rules

relating to insubordination, failure to complete an assignment, and incompetency or

inefficiency.  Plantan claims damages resulting from the suspension that include a loss

of approximately $50,000 in wages, $5,000 in Truman College contributions to his

---

[1] Plaintiff improperly sued Harry S. Truman College as the Defendant to this suit.  Plaintiff's employer is the City Colleges of Chicago, and the proper Defendant is the Board of Trustees of Community College District #508, otherwise known, and doing business, as City Colleges of Chicago.  Harry S. Truman College is one of the City Colleges.  Defendants have made note of the fact that Truman College was improperly named as the Defendant in the instant matter but the City Colleges proceeds to defend the suit on the merits.  For the purposes of this opinion, Harry S. Truman College is referred to as "the College" or "Truman College" and the Board of Trustees of Community College District #508, d/b/a City Colleges of Chicago, is identified as "City Colleges."

pension plan and, depending on when Plantan retires, an approximate loss of $50,000 due to the long-term effect of the suspension on the resultantly reduced contribution rate to his pension. Plantan, who is Caucasian, claims that the decision by the College administrators to suspend him was improperly based on his race. Plantan points to the fact that many, if not all, of the administrative officers in the decision-making process are of minority heritage. For the reasons stated below, the College is entitled to summary judgment on the sole remaining Count of Plantan's Second Amended Complaint. In addition, Plantan's Motion to Strike Defendant's Statement of Facts in Part Due to Spoliation is denied.

## I.      The Material Undisputed Facts

Richard Plantan has been an employee of the City Colleges since 1970. (Pl. 56.1 Resp. ¶ 1). In 1996 Plantan transferred to Harry S. Truman College as a full time professor in the Department of Computer Information Systems and Business. (*Id.* ¶¶ 2, 4). Plantan regularly teaches two courses: "An Introduction to Business," and "Financial Accounting." (*Id.* ¶ 4). The relationship between faculty and the City Colleges is governed by a Collective Bargaining Agreement. (*Id.* ¶ 8). Faculty members are evaluated by a Faculty Evaluation Process in a manner proscribed by the Agreement. (*Id.*). The Faculty Evaluation Process is overseen by a Department Evaluation Committee, which is composed of the department chair of the relevant department for the faculty member being evaluated, the Academic Vice President for

the College (or his or her designees), and two other members of the relevant department. (*Id*. ¶ 9). The Committee evaluates faculty members and then makes recommendations to the College administration. (*Id*. ¶ 10).[2]

The Committee is empowered to recommend an "enhancement" if a faculty member is determined to have a deficiency in a particular area of his teaching or job performance. (*Id*.). If a faculty member receives enhancement, he will usually be required to show satisfactory improvement in that area or those areas identified by the Committee for enhancement. (*Id*.). A faculty member placed on enhancement will usually remain on enhancement until the Committee and the Truman College administration determine that the faculty member has satisfactorily demonstrated completion or improvement in the area(s) designated for enhancement. (*Id*.). Whether or not to enhance is a decision made by the College administrators based on the recommendation of the Committee. (*Id*.). The Collective Bargaining Agreement provides that any faculty member who is enhanced by the Committee will have one year to demonstrate improvement. (*Id*. ¶ 11). With respect to an ongoing enhancement—that is, an enhancement that is not cured within the proscribed year or that persists on a continuing basis—the practice of Truman College is to evaluate the

---

[2] In Plantan's Answers to Defendant's Rule 56.1(a) Statement of Material Facts, Plantan incorrectly numbers many of the paragraphs of Defendant's Facts. Paragraphs identified in Plantan's Answers to Defendant's Facts as 11 through 21 are actually paragraphs 12 through 22 of Defendant's Statement of Facts. Likewise, paragraphs identified in Plantan's Answer to Defendant's Facts as 22 through 76 are actually paragraphs 24 through 78 of Defendant's Statement of Facts. This Court will refer to the correct paragraph number as it appears in Defendant's Statement of Facts.

faculty member's compliance with the enhancement on a semester by semester basis. (*Id*. ¶ 12).

Plantan was placed on enhancement by the College in 1999 and he remained on enhancement continuously through his suspension. (*Id*.). Plaintiff admits to being on enhancement "probably since 1999" and to "being evaluated every single year and enhanced every single year." (*Id*. ¶ 14; Plantan Dep., pp. 25-26). He states that "since [he is] a stubborn human being, [he] kept ignoring them," and "not doing anything in terms of the enhancement…" (*Id*. ¶¶ 14, 16; Plantan Dep., pp 25-26, p. 92). Plantan testified that he was continuously on enhancement from 1999 until 2010. (*Id.* ¶ 14; Plantan Dep., pg. 27). Plantan claims that he was not on enhancement from 2006 through 2007. (*Id.* ¶ 13). This fact is stricken because it is supported only by a self-serving declaration and conflicts with Plantan's affidavit, in which he states that he was on continuous enhancement from 1999 through 2010. (Plantan Dep., pg. 27).

Since the Spring of 2003, the Committee's continued enhancement requirements for Plantan have focused on his lack of proficiency with and use of computer technology in his teaching. (*Id*. ¶¶ 17-18). The issue of incorporating new technology tools into the classroom was brought to Plantan's attention in 2003. (*Id*. ¶ 18). The Committee required that all faculty members who taught financial or management accounting integrate spreadsheets and computer assignments into their teaching. (*Id*.)

On May 4, 2006, Dr. Pervez Rahman, the Academic Vice President of the College and a member of the Committee, sent Plantan a memorandum outlining the steps that Plantan needed to take to meet his continued enhancement requirements. (*Id*. ¶ 19). These included the introduction of new technology tools to Plantan's students, such as trips to the computer lab and demonstrations of spreadsheets of financial statements, and the incorporation of those tools into his lectures, as well as a demonstration to the Committee of Plantan's proficiency in the use of this technology and how he uses it in the classroom. (*Id*.). Rahman's memo further stated that Plantan needed to comply with the enhancement requirements before the end of the Spring 2006 semester and that Plantan should meet with Rahman and the Committee before Plantan left for summer break to assess the progress that Plantan was making towards compliance with the Committee's requirements. (*Id*. ¶ 20). Plantan never meet with the Committee prior to the end of the semester. (*Id*. ¶ 21).

In the Fall of 2007, the Committee recommended continued enhancement of Plantan at their Committee meeting. (*Id*. ¶ 22). The Committee informed Plantan at a meeting held in the Fall that he was required to meet the criteria of his prior enhancement, set out in the May 4, 2006 memorandum, by the end of the Spring 2008 semester. (*Id*.). In addition to Plantan and Rahman, the meeting included Sanzavale Maliza, Plantan's Department Chair, and Bernice Downs, Associate Dean of Instruction. (*Id*.). Rahman further sent a memorandum to Plantan on January 31, 2008, confirming

the decision of the Committee to keep Plantan on enhancement and again informed Plantan of the requirements of his enhancement. (*Id.* ¶ 25). (*Id.*). Rahman advised Plantan that he would be required to meet with the Committee to determine his compliance with his enhancement criteria by the end of the term. (*Id.* ¶ 26). Rahman also stated that the enhancement agreement would not be extended beyond the end of the Spring 2008 term. (*Id.*).

On April 25, 2008, as the Spring term was nearing a close, Associate Dean Downs sent two emails to Plantan, one at 4:31 p.m. and another at 4:37 p.m. (*Id.* ¶ 30). The first email was captioned with subject line "Enhancement Requirements," and the second with "Project Presentations." (*Id.*). The first email explained that Plantan had failed to show any compliance with his enhancement requirements and instructed him to appear at an appointed teaching demonstration on Thursday, May 1 at 1:30 p.m. (*Id.* ¶ 31). The records of the computer systems maintained by the College show that the first email was delivered to Plantan on April 25, 2008 at 4:35 p.m. but was never read by him. (*Id.* ¶ 32). These records also indicate that the second email was read by Plantan on May 1, 2008 at 10:55 a.m., over two and a half hours before the scheduled teaching demonstration. (*Id.*). Plantan, however, failed to appear for the teaching demonstration, and upon investigation the Committee members found Plantan's office dark and locked. (*Id.* ¶¶ 35-36).

Plantan claims that on May 6, 2008 he delivered his response and evidence of compliance with the enhancement requirements to Anthony Johnston, Plantan's Union representative. (Def. Supp. 56.1 Reply ¶ 23). Plantan cites to his Exhibit 14, which is a document titled "Response To Enhancement Plan," and claims that it is a compliant response. (*Id*.). However, Exhibit 14 does not establish compliance with any of the enhancement criteria, including proficiency with technology and the use of this technology in the classroom. (*Id*.). Plantan also claims that Johnston told him that he delivered the response to Associate Dean Downs. (*Id*.). This fact is not supported by any evidence and is self-serving, and is therefore stricken. Plantan alternatively claims that he submitted Exhibit 14 on or about May 14, 2008 (Pl. 56.1 Resp. ¶ 44). Although Plantan does not say that he submitted Exhibit 14 through Johnston, Johnston's deposition testimony is the corroborating evidence, and Johnston testified that he delivered the materials on or about May 14, 2008. (Johnston Dep. pg. 27). Nevertheless, Exhibit 14 is not a compliant response to the enhancement requirements.

Having failed to take any of the remedial steps necessary to cure his enhancement status, and having failed to appear at the scheduled teaching demonstration, the City Colleges began disciplinary proceedings against Plantan. (Pl. 56.1 Resp. ¶ 37). On May 15, 2008, Lynn Walker, the Interim President of Truman College, sent a letter to Plantan notifying him that a pre-disciplinary hearing would be held and that he was being charged with violating certain City Colleges Work Rules.

(*Id*.). Plantan received Walker's letter by certified mail; by Plantan's estimation he received it within three to five days of it being mailed. (*Id*. ¶ 38; Plantan Dep., p. 56). The City Colleges charged Plantan with violating certain "City College Work Rules relating to (a) insubordinate actions, (b) failing to take action as needed to complete an assignment, and (c) incompetency or inefficiency in the performance of the duties of his position." (Pl. 56.1 Resp. ¶ 37; Rahman Decl., Exhibit 8).

A pre-disciplinary hearing was held for Plantan on June 9, 2008 over which Rahman presided. (Pl. 56.1 Resp. ¶ 39). Among those in attendance at the hearing was Dean of Instruction Elizabeth Roeger, who, like Plantan, is Caucasian. (Def. 56.1 Reply ¶ 26). After hearing the evidence presented at the hearing, Rahman concluded that "(a) [Plantan] had deliberately not opened the first email, (b) [Plantan] was not adequately using technology in his teaching, including specifically his failure to use Excell or some other software to create spreadsheets in his Business 181 Financial Accounting course, and (c) on the issue of insubordination, Plantan has demonstrated a pattern of failing to take action as needed to complete an assignment." (Pl. 561. Resp. ¶ 44). Rahman's conclusions from the hearing were set forth in a memorandum dated July 2, 2008, and sent to Interim President Walker. (*Id*. ¶39). Walker made the decision to recommend to the Board that Plantan be suspended from teaching for one semester without pay. (*Id*. ¶ 47). After the pre-disciplinary hearing, Plantan's Union representatives filed a

grievance on Plantan's behalf. (*Id*. ¶ 75). The City Colleges denied the grievance. (*Id*.). The Union chose not to appeal the denial of the grievance. (*Id*.).

Based on the recommendation from Walker, then-Chancellor Wayne Watson sent Plantan a letter by certified mail informing him of Walker's recommendation, that the recommendation had been accepted, and that the recommendation would be presented to the Board for action at the next Board meeting on July 16, 2008. (*Id.* ¶ 49). The letter was sent on July 14, 2008, and by his own admission and estimation, Plantan received the letter within three to five days from the time it was mailed. (*Id.* ¶ 50). Plantan acknowledged that upon receiving what he referred to as "the suspension letter," he knew he was going to be suspended. (*Id.* ¶¶ 52-53). Plantan was suspended without pay for the Fall 2008 semester, beginning August 11, 2008 and ending December 12, 2008. (*Id*. ¶ 53). Plantan's Union representatives could have appealed the suspension, but again chose not to. (*Id*. ¶ 76). In making the decision not to appeal, the Union concluded that the suspension was a fair and reasonable disciplinary measure. (*Id*.). Johnston, Plantan's representative, testified that based on his involvement in the entire matter he had no reason to believe that Plantan had been discriminated against because of his race. (*Id*. ¶ 77).

Since 2006, there have been only two other full-time professors to teach "Financial Accounting" at the College. (*Id*. ¶ 5). Jonathan Brown, an African-American, is the only other member of the Department of Computer Information Systems and Business to

teach this course. (*Id.* ¶¶ 5-6). Lisa Tekmetarovic, a Caucasian, was a member of the Department of Computer Information Systems and Business and is now in the Social Science Department, but she continues to teach accounting courses in the Department of Computer Information Systems and Business. (*Id.* ¶¶ 5, 67-68). Full-time tenured faculty members are evaluated every four years, unless they are already subject to enhancement, in which case they are reviewed yearly for a regular enhancement and every semester for an ongoing enhancement. (*Id.* ¶¶ 11-12). Brown, like Plantan, received enhancement in 1999. (Def. 56.1 Reply ¶ 8). There is no evidence in the record indicating whether Brown's was a one-time enhancement or an ongoing enhancement. What is clear is that Brown was not on enhancement when he came up for evaluation in 2006. (Pl. 56.1 Resp. ¶ 62). Furthermore, at the time of Brown's review there were no outstanding Committee requirements in place that Brown had failed to satisfy. (*Id.*) Upon evaluating Brown, the Committee considered his use of and proficiency with technology to be greater than Plantan's. (*Id.* ¶ 63). Furthermore, Brown incorporated technology into his teaching and the Committee determined that he did not merit any enhancement. (*Id.* ¶¶ 63-64). Unlike Plantan, Brown has never been asked by the Committee or by the Truman College administration to give a teaching demonstration, and Brown had never failed to appear at any required teaching demonstration. (*Id.* ¶ 65). At the time of the Committee's decision not to enhance Brown, Walker was not yet employed at Truman College and therefore had no involvement in the decision-making

process. (*Id*. ¶ 66). At that time the President of Truman College was Marguerite Boyd and the Dean of Instruction was Elizabeth Roeger. (*Id*.). Boyd, like Roeger, is Caucasian. (*Id*.). The other full-time faculty member of the College to teach accounting in the Department is Tekmetarovic. (*Id.* ¶ 5). Tekmetarovic came up for evaluation in her department in the Fall of 2007. (*Id.* ¶ 68). Rahman, as Academic Vice President, was a part of the Committee that reviewed Tekmetarovic. (*Id*.). Upon the completion of the evaluation, the Committee did not recommend Tekmetarovic for enhancement and she did not receive enhancement. (*Id*).

On May 15, 2009, Plantan filed a charge with the Equal Employment Opportunity Commission alleging that the College had unlawfully discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. (*Id*. ¶ 55). After pursuing his claim with the EEOC to no avail, Plantan brought suit in this Court alleging in his first Complaint claims against Harry S. Truman College for race discrimination; retaliation; age discrimination; breach of employment contract; disparate treatment and impact on the basis of race; collusion, concerted activity, conspiracy; and defamation per se. (Doc. 1). In his First Amended Complaint Plaintiff named as additional defendants Pervez Rahman and Berniece Downs, in their official and individual capacities. (Doc. 22). In his Second Amended Complaint, Plantan narrowed his focus to two counts: one against Truman College for race discrimination in violation of Title VII and one against all the defendants for race discrimination in

violation of 42 U.S.C. § 1981. (Doc. 23). On August 19, 2010 Truman College moved this Court to dismiss Count II of Plantan's Second Amended Complaint for failing to state a claim upon which relief may be granted. (Doc. 33). Plantan then made a Motion for Voluntary Dismissal of Count II of his Second Amended Complaint, which this Court granted. (Doc. 44). Truman College moved for Summary Judgment against Plantan on the one remaining Count against it for race discrimination in violation of Title VII. (Doc. 54). Plantan opposed the College's Motion for Summary Judgment and filed a Motion to Strike Defendant's Statement of Facts in Part Due to Spoliation. (Doc. 64; 70).

## II. The Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000).

Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (Internal quotations omitted).

## III. Discussion

### A. Timeliness of Plantan's Suit

To maintain a cause of action for discriminatory treatment under Title VII of the Civil Rights Act of 1964, a plaintiff must have properly exhausted his administrative remedies with the Equal Employment Opportunity Commission. *See Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) (Posner, J.) ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies, 42 U.S.C. § 2000e-16(c), which means not until he has received a right-to-sue letter from the EEOC, signifying that the EEOC will not provide him with any relief."); *see also Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) (exhaustion of administrative remedies with the EEOC is a precondition of filing suit). These procedural requirements include the timely filing of

the initial charge with the EEOC.  *See Jackson v. City of Chicago*, 552 F.3d 619, 624 (7th Cir. 2009).  In Illinois, a Title VII plaintiff must file his charge within 300 days "after the alleged unlawful employment practice occurred."  *See* 42 U.S.C. §2000e-5(e)(1); *accord Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1999) ("In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act and failure to do so renders the charge untimely.").  Each allegedly discrete act of discrimination starts a new clock for filing a charge.  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) (holding that the clock to file a charge with the EEOC alleging a discriminatory act begins when the act occurs and that the clock restarts with each discrete act); *see also Roney v. Ill DOT,* 474 F.3d 455, 460 (7th Cir. 2007).  Thus, as to each discrete act of alleged discrimination, Plantan had 300 days to file a charge with the EEOC with respect to that particular act.  If Plantan did not file a timely charge with the EEOC for a particular act then he is barred from seeking relief based on the alleged illegality of that act in this Court.

*i.    Plantan's Pre-Suspension Claims*

Plantan's Complaint is hardly precise, and it is difficult to determine exactly what employment practices he is alleging were illegally motivated by race.  It is not clear from Plantan's Complaint, his Answers to Defendants Rule 56.1 Statements of Material Facts, his own Additional Facts, or his Memorandum in Opposition to Summary Judgment, whether Plantan is pursuing any pre-suspension claims.  Plantan also makes

no response to the College's arguments respecting pre-suspension claims in his opposition brief.[3]

Plantan's original enhancement occurred in 1999. But the comparative person that Plantan identifies, Brown, was also enhanced in 1999. Reading Plantan's Second Amended Complaint in the light most favorable to him, the preferential treatment he alleges that Brown received occurred in 2006 or 2007, when Brown was not enhanced but when Plantan remained enhanced. These events fall well outside the time limit imposed by the 300-day window to file a charge with the EEOC. Plantan filed his EEOC charge on May 15, 2009; essentially, any discreet acts of race discrimination occurring prior to July 19, 2008 are time-barred. *See* 42 U.S.C. §2000e-5(e)(1); *Filipovic*, 176 F.3d 395.

The doctrine of continuing violation does not aid Plantan in any attempt he might make to reach back and assert that wrongs committed prior to July 19, 2008 are actionable. That doctrine is a limited one, allowing a plaintiff to delay bringing charges "until a series of acts by a prospective defendant blossom into a wrongful injury on which a suit can be based." *Arthur L. Lewis, Jr., et al., v. City of Chicago*, 528 F.3d 488, 490 (7th Cir. 2008) (Posner, J.). The doctrine is typically invoked in workplace sexual

---

[3] Indeed, Plantan seems to waive the right to challenge any pre-suspension acts of the College. In his Response to Defendant's Memorandum in Support of its Motion for Summary Judgment, Plantan does not respond to the Defendant's argument that his pre-suspension claims are time-barred. (*See* Plaintiff's Memorandum of Law in Opposition to Summary Judgment, pg. 7). Furthermore, he does not state whether he is even pursuing pre-suspension claims. By not responding to the College's arguments, Plantan waives the right to argue that his pre-suspension claims are timely or cognizable by this Court. *See Palmer v. Marion County*, 327 F.3d 588, 597-598 (7th Cir. 2003) (holding that claims not addressed in a brief opposing summary judgment are waived).

harassment cases, where a series of repeated actionable harassments is needed to show that a violation occurred. *Id.* In such a case, the initial act(s) of harassment may not be enough to show a pattern of discrimination on the basis of sex, and so courts allow a plaintiff in such a suit to reach back to prior events in order to demonstrate an "actionable pattern of harassing behavior." *Id.* By contrast, Plantan, by his own admission, claims that he suffered an adverse employment action upon first being enhanced. He testified that he did not comply with the Committee or the enhancement process because he thought it was racially motivated from the beginning. (*See* Plantan Dep., pp. 25-26). If Plantan wished to allege that the decision to enhance him in 1999, or the decisions to continue enhancing him though 2008, constituted adverse employment actions then he needed to file a charge with the EEOC within 300 days of each discreet act. He did not do this. Plantan is precluded from arguing that events prior to July 19, 2008—which is potentially the date on which he learned of his suspension and exactly 300 days prior to the filing of his charge with the EEOC—are actionable under Title VII.

ii.     *Plantan's Suspension Claim*

The more favorable reading of Plantan's arguments suggests that the suspension is the only relevant employment practice at issue here. The gravamen of Plantan's complaint is that the Truman College administration's suspension of him without pay for the Fall 2008 semester was illegally motivated by race, a direct violation of Title VII.

To determine whether Plantan has a timely suit—which is to say, whether he timely filed his complaint with the EEOC—it is necessary to determine when the adverse employment practice (i.e., the suspension) legally occurred.

The College claims that the adverse action occurred upon the mailing and receipt of the certified letter informing Plantan of his suspension. Analogizing to a presumption in some courts that a defendant receives a right-to-sue letter from the EEOC within three days of its mailing, the College claims that Plantan received the letter by operation of law three days after its mailing, on July 17, 2008. Alternatively, they argue that Plantan received the letter between July 14, 2008 and July 18, 2008—which is within the three to five day window in which Plantan admits to having received the July 14 suspension letter. The College points out that Plantan does not testify to, or offer any evidence to suggest that, he actually received the letter on Saturday, July 19. By contrast, Plantan claims that the practice occurred on August 11, 2008, the date when his suspension actually commenced. Alternatively, Plantan can rest on his testimony that he did not receive the suspension letter until July 19, 2008, which is exactly 300 days before he filed his charge with the EEOC. Because Plantan filed his charge on May 15, 2009, if Defendants are correct then Plantan's suspension claim may be time-barred, whereas if Plantan is correct then it is not and his suit may go forward.

An unlawful employment practice, such as a disciplinary decision leading to a suspension, occurs when the individual learns of the adverse decision, not later when the action ultimately goes into effect. *See Stepney v. Naperville School District 203,* 392 F.3d 236, 240 (7th Cir. 2004). Likewise, in the context of alleged employment discrimination resulting from a layoff decision, the practice occurs when notice of the layoff is tendered to the employee, not at the later time of the actual layoff. *See Kuemmerlein v. Board of Educ. of the Madison Metro. Sch. Dist.,* 894 F.2d 257, 260 (7th Cir. 1990). Therefore, the 300-day limitations period begins to run when the employee learns of his employer's decision, and not when that decision eventually comes to pass.

Plantan testified that when he received the suspension letter he knew he was going to be suspended. He testified that to his knowledge Watson "was the end person in a long process." Furthermore, Plantan testified that it was his belief that the Board "would just rubber-stamp" the suspension decision. Thus it is clear from Plantan's own admissions that he viewed the adverse employment practice as occurring upon his receipt of the suspension letter. This assumption conforms with the caselaw described directly above. Thus, the relevant employment practice occurred when Plantan learned of the suspension from the July 14 suspension letter and Plantan had 300 days from the receipt of that letter to file his charge with the EEOC.

Because Plantan claims that he may have received the letter as late as July 19, 2008, the College argues that this Court should apply a presumption that a letter is received three days after it is mailed. The College relies on a footnote in *Baldwin County Welcome Ctr. v. Brown* for the general proposition that a plaintiff is presumed to receive a right-to-sue letter from the EEOC within three days of the mailing of the letter. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1 (1984) (relying on Federal Rule of Civil Procedure 6(e) to presume that plaintiff received the EEOC's right-to-sue letter within three days because the plaintiff had no other proof of when the letter was received). The College also cites to a few district court cases that have entertained this presumption, but in those cases receipt was again presumed because there was no evidence in the record to show when the mailing was actually received. *See, e.g., Kaveler v. U.S. Bancorp, Ins. Servs., LLC.*, No. 06-C-04-DRH, 2007 WL 2714115, *2 (S.D. Ill. Sept 17, 2007); *Powell v. Service Employees Int'l Union, Local 4*, No. 06 C 5272, 2007 WL 2198777, *1 n. 1 (N.D. Ill. July 26, 2007). Finally, the College cites to a very recent Second Circuit opinion holding that there is a presumption "that a mailed document is received three days after its mailing." *Isaacson v. New York Organ Donor Network*, 405 Fed. Appx. 552, 2011 WL 13467, *1 (2d Cir. 2011). The Second Circuit's presumption is rebuttable by evidence that the document was received later. *Id.* Without questioning the wisdom of the Second Circuit's opinion, it is certainly not the law in this Circuit. *See Prince v. Stewart*, 580 F.3d 571, 574 (7th Cir. 2009) ("...the limitations period in both Title VII and

the ADEA begins to run, as we said, when the claimant *receives* the letter, not when it was sent…"); *Threadgill v. Moore, U.S.A., Inc.,* 269 F.3d 571, 574 (7th Cir. 2001) (holding that actual receipt of a right-to-sue letter starts the clock on the 90 period to file suit); *Houston v. Sidley & Austin,* 185 F.3d 837, 839 (7th Cir. 1999) (holding that the 90-day period to file suit begins to run when the plaintiff actually receives the EEOC's right-to-sue letter). This Court declines to follow the somewhat extraordinary suggestion of the College and thus will not hold that, as a matter of law, all letters are presumed received three days after they are mailed.

Plantan testified that he probably received the letter sometime between three to five days after it was mailed; and if he actually received it on July 19, 2008—the outer bounds of the timeframe he identifies—then his charge with the EEOC was filed exactly within 300 days of the adverse employment decision. Neither side has proven the date on which Plantan actually received the letter; the College cannot do so, and Plantan either doesn't remember exactly when he received the letter or he sets forth a self-serving statement to preserve his claim. The credibility of Plantan's claim as to when he received the letter is an issue for a jury to decide and is not one that is properly subject to summary adjudication. However, whether Plantan's charge was timely filed with the EEOC is not dispositive of this motion, and for the reasons explained below the College is entitled to summary judgment because Plantan cannot prove that he was discriminated against in violation of Title VII. Without any evidence to contradict

Plantan, the Court must assume that he received the suspension letter as late as July 19 and therefore that his charge of race discrimination resulting from his suspension was timely filed with the EEOC.

### A. Title VII Race Discrimination

A plaintiff in a Title VII case may prove his claim of race discrimination under either the direct method of proof or the indirect method. *See Weber v. Universities Research Ass'n*, 621 F.3d 589, 592 (7th Cir. 2010); *Montgomery v. American Airlines*, 626 F.3d 383, 393 (7th Cir. 2010). Plantan agrees that in order to prove his case he must use the indirect, burden-shifting, method of proof established in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that standard, Plantan must first affirmatively establish a prima facie case of race discrimination. *See Weber*, 621 F.3d 592. If Plantan is able to make out a prima facie case, then the burden shifts to the College to identify a legitimate, nondiscriminatory reason for the adverse employment action. *See Id.* If the College can meet its burden, then summary judgment in its favor is proper unless Plantan can offer into evidence proof that the legitimate, nondiscriminatory reason was merely a pretext for racial discrimination. *Id.*

To establish a prima facie case of race discrimination under Title VII, Plantan must prove (1) that he is a member of a protected class; (2) that he was meeting the College's legitimate job expectations; (3) that he suffered an adverse employment action

at the hands of the College; and (4) that the College treated similarly situated employees not within Plantan's class more favorably than they treated Plantan. *Id.* However, this is a reverse-discrimination case, and therefore the first prong of the *McDonell Douglas* framework cannot be met because Caucasians are not members of a protected class for the purposes of Title VII. *See Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005); *Mills v. Health care Servs. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). Thus, in lieu of demonstrating that he was a member of a protected class, Plantan must instead show that "background circumstances" exist to show that the College is "one of those unusual employers who discriminates against the majority." *Mills*, 171 F.3d 454 (quoting *Taken v. Oklahoma Corp Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997)). Because all of Plantan's pre-suspension claims, and all events before July 19, 2008, are time-barred, the only adverse employment action for which Plantan may seek redress is his 2008 suspension.

i.      *The Background Circumstances*

As this Court has previously held, to demonstrate the requisite background circumstances prong, a plaintiff must show that something "fishy" was going on or that there is evidence to support an inference of discrimination. *See Sendra v.* Potter, No. 09 C 884, 2011 WL 2262921, *5 (N.D. Ill. June 9, 2011). In *Mills,* the Seventh Circuit gave a number of examples of factual situations that, if established by the evidence, would sustain a finding that "background circumstances" exist to support an inference of discrimination. *Id.* (citing *Mills,* 171 F.3d at 455). One example is that of an employer

who fixes performance ratings to disadvantage white plaintiffs. *Id.* Another example is an employer who, for no legitimate reason, alters its hiring procedures to hinder the hiring of white employees. *Id.*

There is no credible evidence in the record from which Plantan can demonstrate that the College discriminates against Caucasians. Indeed, Plantan cites to no record evidence or any caselaw to support his position that "background circumstances" exist which show that the College is one of those unusual employers who discriminates against the majority. In his brief, Plantan makes several allegations about the Committee that enhanced him. This includes allegations that Maliza was ill and therefore did not serve on Brown's enhancement Committee and that Brown was eventually enhanced in 2011. But none of these allegations are supported by any evidence as required by Local Rule 56.1. Plantan also suggests that all the decision-makers in the process that lead to his enhancement were non-Caucasian, but Plantan failed to establish the race of all of the decision-makers and failed to cite to record evidence to establish the race of all the decision-makers who suspended him. This Court in *Sendra*, under a similarly inadequate record furnished by the plaintiff, found that this lack of evidence was highly persuasive in concluding that no inference of discrimination could be found. Indeed, an accurate survey of the record demonstrates that the decision-makers who were involved in enhancing Plantan and eventually suspending him included Caucasian as well as non-Caucasian individuals. (*See e.g.,*

Plantan Dep., pp. 100-102; stating that Roeger was involved in the process and that she is Caucasian).

Plantan claims that he is the only white faculty member in a Department that employs seven full-time professors. That, standing alone, is not enough to show that the College discriminates against Caucasians. As an initial matter, Plantan completely ignores Lisa Tekmetarovic, who is Caucasian and teaches accounting in the Department. Though Tekmetarovic's official appointment is in a different department than Plantan's, Plantan's suit is against the College as a whole and thus Tekmetarovic's presence on the faculty diminishes Plantan's argument that there are "background circumstances" to establish a pattern of reverse-discrimination at the College. Indeed, Jonathan Brown, Plantan's comparative, was placed on enhancement in 1999. The Committee that placed Brown on enhancement was comprised of the same members who enhanced Plantan in the same year. This rebuts the argument that Brown was treated more favorably than Plantan when Plantan was first enhanced. The fact that Brown was subsequently not enhanced is not evidence of "background circumstances" of reverse-discrimination. Indeed, Brown was not enhanced because he was in compliance with the administration's expectations; whereas Plantan most certainly was not. Plantan fails to establish that "background circumstances" exist at the College to support an inference that the College discriminates against Caucasians.

ii. *The College's Legitimate Job Expectations*

As the record shows, Plantan was on continuous enhancement from 1999 to 2010, clearly demonstrating that he was not meeting the College's legitimate job expectations. The Committee that evaluated Plantan, along with the College administration, found that Plantan was not adequately using technology in his teaching, was not adequately proficient in the use of this technology, refused to comply with his enhancement requirements and blatantly disregarded, and refused to cooperate with, the Committee or the administration. Plantan admitted to all of this in his affidavit, in which he states that because he is a stubborn person he continuously ignored the job requirements imposed by the Committee and the administration. He further admits that he purposefully did not cooperate with the enhancement process. Clearly, Plantan was not meeting the College's legitimate job expectations by continuously flouting the College's requirements and directions with respect to his teaching.

iii.     *Adverse Employment Action*

Plantan was suspended without pay for the Fall 2008 semester for violating certain City Colleges Work Rules relating to insubordination, failure to complete an assignment, and incompetency or inefficiency. The College does not dispute that, as a result of Plantan's violations, they took adverse employment action against him. Prior to his suspension, Plantan did not receive any adverse employment action despite his blatant failure to comply with the enhancement requirements and to cooperate with the enhancement process. *See de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th

Cir. 2008) (holding that, at a minimum, a plaintiff must be able to show a quantitative or qualitative change in the terms or conditions of employment in order to demonstrate an adverse employment action under Title VII, and that negative performance evaluations, including letters of concern, alone are not cognizable adverse employment actions); *Traylor v. Brown*, 295 F.3d 738, 788 (7th Cir. 2002) (holding that an adverse employment action must result in material harm and be of a greater magnitude than an alteration of job responsibilities, such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits…").  In any event, Plantan cannot seek relief for any adverse employment action he perceives as redounding upon him prior to his suspension because such claims are time-barred and waived.

### iv. *More Favorable Treatment of Similarly Situated Non-Caucasian Employees*

To establish a prima facie case of reverse-discrimination, Plantan must show that the College treated a similarly situated non-Caucasian person more favorably than they treated Plantan.  Plantan compares himself to Brown, and claims that he was equal to Brown in the performance of his job.  For the purposes of Title VII, a plaintiff must establish a valid comparative who is similarly situated to the plaintiff.  To be similarly situated, the two employees must be "directly comparable in all material respects." *Raymond v. Ameritech Corp.,* 442 F.3d 600, 610 (7th Cir. 2006).  In deciding whether two employees are directly comparable, courts consider a variety of factors, which may

include "a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). There is ample evidence in the record to find that Brown is not similarly situated to Plantan.

Both Brown and Plantan teach accounting courses in the same Department of Truman College; it appears that this is where the similarities between the two begin and end. As both are employees of the College and members of the Department, they are subject to the same work rules and report to the same supervisors. However, as of his 2006 evaluation, Brown was in substantial compliance with the administration's expectations of him, he was not subject to a pre-existing enhancement or any outstanding work requirements, and the Committee did not recommend his enhancement. In short, Brown was in complete compliance with the College's rules and expectations. By contrast, Plantan was on ongoing enhancement from 1999 through his suspension. Enhancement by its very nature indicates that a faculty member is in some material way not complying with the College's standards or is otherwise deficient in their job performance as a teacher. The evidence shows that Plantan was uncooperative in his dealings with the Committee and the administration, was unwilling to take the necessary steps to remedy his enhancement or to perform his enhancement

requirements, and was insubordinate. Thus, there were "differentiating or mitigating circumstances as would distinguish [Plantan's] conduct" from Brown's, and which would also "differentiate[] or mitigate[]…the employer's treatment of them." *Id.*

Plantan cannot establish any of the elements of a prima facie case under the *McDonell Douglas* framework for indirect proof of racial discrimination in violation of Title VII, other than that he suffered an adverse employment action. (The College readily concedes this prong of the test; there is no dispute over whether he was actually suspended.) Having failed to make out a prima facie case, the College need not rebut Plantan's claims by showing that they had a legitimate, non-discriminatory reason for their action. It is also clear from the record that there were legitimate, nondiscriminatory reasons for suspending Plantan, including his failure to comply with his enhancement requirements and his ongoing insubordination. Furthermore, Plantan has not offered any evidence to support a finding of pretext—which is to say, Plantan has not introduced any evidence to show that the College's reason for suspending him was not credible or based in the facts presented, nor has he introduced any evidence to support a finding that the real reason for the suspension was to discriminate. *See Stockwell v. Harvey*, 597 F.3d 895, 901 (7th Cir. 2010).

### A.   Plantan's Motion to Strike Defendant's Statement of Facts in Part Due to Spoliation

After conducting discovery in this case and having brought it to this dispositive stage, Plantan now moves to strike certain fact statements made by the College in its

Motion for Summary Judgment due to spoliation.  Defendants are correct to argue that Plantan is essentially, and improperly, bringing a discovery motion in the guise of motion to strike.  Plantan argues that this Court should strike 15 of the College's fact statements, which he claims relate to the job performance of his comparator, Brown. (*See* Def. 56.1 Statement of Facts, ¶¶ 17, 19, 20, 22, 24, 25, 26, 27, 29, 44, 60, 61, 62, 63 and 65). Plantan claims that these facts either directly relate to Brown's job performance or else relate to Plantan's own job performance without comparative evidence of Brown's job performance.  Only five of the facts that Plantan seeks to strike directly relate to Brown.  (*See Id.* ¶¶ 60, 61, 62, 63 and 65).  Plantan offers no evidence that the College failed to produce requested and relevant documents relating to Brown, nor does he offer even a scintilla of evidence to suggest that the College destroyed documents relevant to litigation, either negligently or intentionally, after being on notice that such documents might be relevant.  Furthermore, the College actually produced all the relevant documents relating to the five paragraphs concerning Brown's job performance.

Spoliation occurs when a party to litigation engages in the bad faith destruction of evidence.  *See Norman-Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 429 (7th Cir. 2010).  To show spoliation, the movant must show that the non-moving party had a duty to preserve evidence because it knew, or should have known, that litigation was imminent.  *Id.*  As the Seventh Circuit had noted, the "crucial element" in a spoliation

claims is not that the documents were destroyed, but rather that the documents were destroyed for the actual purpose of "hiding adverse information." *Id.* Thus, Plantan must show that the College destroyed evidence of Brown's job performance because of the negative inferences that might be drawn from such evidence in litigation that the College knew of or should have reasonably believed was imminent.

During discovery, Plantan requested the personnel and job files kept by the College relating to the job performances of both himself and Brown. The College made certain objections to Plantan's discovery requests, including that they were overbroad and contained no timeframe. The College agreed to produce the relevant personnel files relating to Brown and Plantan's evaluations between 2005 and 2006. The College limited the time period to correspond with what Plantan himself asserted was the comparative time period in his responses to the College's discovery requests. Prior to filing the instant motion, Plantan's counsel never raised any objections to the College's discovery responses or document production; counsel never asserted that the responses or productions with respect to Brown were inadequate; and counsel never filed any motions with this Court, such as a motion to compel, to assist in obtaining discovery from the College.

With respect to the five paragraphs relating directly to Brown, the College produced the entire post-tenure review documents from 2006. This disclosure included all the source documents that Plantan sought and that are the subject matter of the five

fact paragraphs that Plantan seeks to have this Court strike. The remaining ten fact statements that Plantan seeks to strike relate specifically to Plantan and the ongoing enhancement of him by the College. These facts do not relate to Brown's job performance, evidence of which Plantan's motion seeks to bar. What Plantan is attempting to do is have this Court strike the record evidence of his noncompliance and insubordination by arguing that the College, in failing to adequately maintain personnel records of a similarly situated employee, committed spoliation. The gist of Plantan's argument is that without Brown's entire personnel record there is no way to determine whether Plantan was racially discriminated against because he cannot adequately compare his treatment to the treatment of a similarly situated non-white employee. But as this Court has already held, all pre-suspension claims are time-barred through Plantan's failure to file a timely charge with the EEOC. The relevant evidence relating to Brown's job performance concerns his evaluation in 2006. The College produced these documents and files and thus Plantan had all the relevant evidence from which to compare his treatment to Brown's. Furthermore, Plantan has supplied no evidence of spoliation regarding the personnel files of Brown. There is no reason to believe that the college destroyed records to avoid their discovery in this litigation.

## I.       Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion to Strike is denied and the Court enters final judgment in favor of Defendants.

_____
Hon. Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 28, 2011